UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTOPHER BROSCHART,

        Plaintiff,
                 9:11-CV-0405
v.                 (LEK/TWD)

NANCY O'CONNOR-RYERSON,

        Defendant.
_____

APPEARANCES:              OF COUNSEL:

CHRISTOPHER BROSCHART, 01-A-3246
Plaintiff pro se
Mid-State Correctional Facility
P.O. Box 2500
Marcy, New York 13403

HON. ERIC T. SCHNEIDERMAN       ADRIENNE J. KERWIN, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

   This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Christopher Broschart claims that Defendant Nancy O'Connor-Ryerson, a physician assistant at Auburn Correctional Facility ("Auburn"), violated his Eighth Amendment right to adequate medical care by abruptly discontinuing his pain medication. (Dkt. No. 16.) Currently

pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 29.) For the reasons discussed below, I recommend that Defendant's motion be granted.

I.  **FACTUAL AND PROCEDURAL SUMMARY**

Plaintiff filed the original complaint in this action on April 13, 2011. (Dkt. No. 1.) In the original complaint, Plaintiff alleged that at the time of his incarceration at Auburn he had "a pre-existing back injury" that had required surgery. (Dkt. No. 1 ¶ 4.) Plaintiff alleged that he has a "metal plate and bolts in his back" that cause him "substantial pain." *Id*. Plaintiff alleged that he informed "proper medical personnel" at Auburn about his back and "the doctor prescribed him Percodan[1] for his back pains." *Id*. ¶¶ 2, 5.

The original complaint alleged that on September 13, 2010, Plaintiff "took a blood test and Defendant O'Connor-Ryerson reviewed the results. Defendant O'Connor-Ryerson determined from the results that the oxycodone was less than 5 and that Plaintiff was not taking his medication and abruptly discontinued Plaintiff's Percodan." *Id*. ¶¶ 6-7. As a result, Plaintiff experienced withdrawal symptoms including "cold and hot sweats," diarrhea, breathing problems, anxiety attacks, insomnia, weak muscles, heartburn, migraine headaches, depression, extreme fatigue, vomiting, upset stomach, and tingling all over his body. *Id*. ¶ 8.

The original complaint alleged that Plaintiff later obtained information from the

---

[1] The medication that Plaintiff was prescribed is described in the record sometimes as Percodan and sometimes as Percocet. Percodan combines the narcotic analgesic oxycodone and the common pain reliever aspirin. The PDR Pocket Guide to Prescription Drugs 1076 (Bette LaGow ed., 7th ed. 2005). It is prescribed for moderate to moderately severe pain. *Id*. Percocet combines acetaminophen and oxycodone and is also used to treat moderate to moderately severe pain. *Id*. at 1073.

Department of Health and Human Services indicating that Percodan should never be abruptly discontinued under any circumstances. *Id*. ¶ 13. Plaintiff alleged that Defendant "intentionally, knowingly and deliberately abruptly discontinued Plaintiff's Percodan for his back pains and knowingly caused Plaintiff substantial pain . . . and totally disregarded the health and safety of the Plaintiff." *Id*. ¶ 15.

Defendant moved to dismiss the original complaint. (Dkt. No. 9.) On January 17, 2012, Magistrate Judge George H. Lowe[2] recommended that the Court dismiss the original complaint with leave to amend because it did not allege facts plausibly suggesting that Defendant acted with deliberate indifference. (Dkt. No. 13.) The Court adopted Judge Lowe's recommendation on February 21, 2012. (Dkt. No. 15.)

Plaintiff filed the amended complaint on March 15, 2012. (Dkt. No. 16.) That complaint is the operative pleading. Plaintiff alleges that in 1992, prior to his incarceration, he was involved in an accident that injured his spinal cord. *Id*. ¶ 4. Plaintiff underwent two surgeries during which plates and bolts were inserted into his back. *Id*. Plaintiff was prescribed a narcotic to "help manage the pain and allow him to ambulate and function." *Id*. ¶ 5. When Plaintiff was incarcerated in 2001, a prison physician reviewed his medical records, examined him, and continued the narcotic pain medication. *Id*. ¶ 6. The prescription continued until September 29, 2010, when Defendant "summarily discontinued" the prescription without examining, speaking with, or informing Plaintiff. *Id*. ¶ 7. Plaintiff immediately filed two grievances and wrote a letter to Defendant describing his withdrawal symptoms. *Id*. ¶ 8. Two days after writing the letter,

---

[2] Judge Lowe retired on February 9, 2012. This case was reassigned to me on February 10, 2012. (Dkt. No. 14.)

Plaintiff saw Defendant. *Id*. ¶ 9. Defendant told Plaintiff that she had received the letter and that there was nothing she could do for him. *Id*. Plaintiff alleges that Defendant said that "it was not her practice to wean a prisoner off a narcotic medicine and that would teach the Plaintiff to take his medicine when prescribed and to handle the symptoms like a man." *Id*. Plaintiff "informed the Defendant at that time that he was taking his medicine religiously and that there had to be an error in her assessment." *Id*. Plaintiff alleges that his prescription was restored a month later by a doctor. *Id*. ¶ 10. Plaintiff alleges that the doctor "informed the Plaintiff that he should never [have] been taken off the medication in that manner and for that reason." *Id*.

Defendant now moves for summary judgment. (Dkt. No. 29.) Plaintiff has opposed the motion. (Dkt. No. 36.)

## II.     APPLICABLE LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id*. at 273. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986). Rather, a

dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material[3] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

      **B.**      **Legal Standard Governing Motions to Dismiss for Failure to State a Claim**

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968); *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

---

[3]     A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### III.    ANALYSIS

Plaintiff claims that Defendant violated his Eighth Amendment right to adequate medical care by "summarily discontinuing the Plaintiff's narcotic prescription without examining, informing or weaning the Plaintiff off the medicine and ignoring the Plaintiff's adverse reactions when informed" of them. (Dkt. No. 16 ¶ 11.) Defendant argues that she is entitled to summary

6

judgment because Plaintiff did not have a serious medical need and cannot establish that Defendant acted from deliberate indifference. (Dkt. No. 29-7.)

### A. Legal Standard Governing Eighth Amendment Medical Claims

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Id*. at 102 (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In fulfilling this duty, prison officials must ensure, among other things, that inmates receive adequate medical care. *Id*. (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

There are two elements to a prisoner's claim that prison officials violated his or her Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citation omitted).

### B. Serious Medical Condition

For the purposes of her previous motion to dismiss, Defendant conceded that the original

7

complaint alleged facts plausibly suggesting that Plaintiff suffered from a serious medical condition. (Dkt. No. 9-1 at 1.) For the purposes of this motion for summary judgment, however, Defendant argues that neither Plaintiff's back condition nor his withdrawal symptoms qualifies as a "serious medical condition." (Dkt. No. 29-7 at 2-4.[4])

1. Back Pain

Defendant argues that Plaintiff's back pain is not a serious medical condition within the meaning of the Eighth Amendment jurisprudence. (Dkt. No. 29-7 at 3.) Although this is a close question, I find that Plaintiff has presented sufficient evidence to raise a triable issue of fact that the back pain he experienced as a result of Defendant discontinuing his pain medication is a serious medical condition.

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted), *accord Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702-03. "When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise

---

[4] Citations to page numbers in Defendant's memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

8

adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith*, 316 F.3d at 185 (quoting *Chance*, 143 F.3d at 702).

Depending on the circumstances, severe back pain can rise to the level of a "serious medical condition." *Thomas v. Connolly*, 2012 U.S. Dist. LEXIS 124644, at *86, 2012 WL 3776698, at *26 (S.D.N.Y. Apr. 10, 2012) (denying defendants' motion for summary judgment where evidence raised a triable issue of fact that transferring plaintiff, who was on a medical hold, from one prison to another caused him severe and excruciating back pain that required immediate treatment upon arrival at new facility); *Flemming v. City of N.Y.*, 2009 U.S. Dist. LEXIS 92132, at *22 & n.9, 2009 WL 3174060, at *8 & n. 9 (E.D.N.Y. Sept. 30, 2009); *Williams v. Smith*, 2009 U.S. Dist. LEXIS 69871, at *22, 2009 WL 2431948, at *9 (S.D.N.Y. Aug. 10, 2009) (collecting cases); *Morrison v. Mamis*, 2008 U.S. Dist. LEXIS 106416, at *29-31, 2008 WL 5451639, at *8 (S.D.N.Y. Dec. 18, 2008) (finding in summary judgment analysis that a reasonable factfinder could consider plaintiff's diagnosed condition of degenerative disc disease a "serious medical need"); *Nelson v. Rodas*, 2002 U.S. Dist. LEXIS 17359, at *50, 2002 WL 31075804, at *14 (S.D.N.Y. Sept. 17, 2002) (holding that "severe back pain, especially if lasting an extended period of time, can amount to a 'serious medical need' under the Eighth Amendment" but finding that plaintiff's allegations of "back spasms" without descriptions of the intensity or duration of the pain did not demonstrate such a condition); *cf. Gillespie v. N.Y. State Dep't of Corr. Servs.*, 2010 U.S. Dist. LEXIS 26246, at *16-17, 2010 WL 1006634, at *5 (N.D.N.Y. Feb. 22, 2010) (finding that it was "extremely questionable" that plaintiff had alleged

9

that his "degenerative osteoarthritis of his lower back" constituted a serious medical condition where medical records documented that, over a three-year period, plaintiff "periodically" claimed to suffer pain described as "intermittent," "chronic," "increasing;" plaintiff had only once described his pain as "severe" and never used adjectives such as "extreme," "excruciating," or "unbearable"); *Phillips v. Goord*, 2009 U.S. Dist. LEXIS 29322, at *18, 2009 WL 909593, at *6 (W.D.N.Y. Apr. 1, 2009) (complaint of "chronic" back pain without more insufficient to find a serious medical condition); *Jackson v. Fairchild*, 2007 U.S. Dist. LEXIS 17497, at *5, 2007 WL 778133, at *2 (N.D.N.Y. Mar. 12, 2007) (finding that plaintiff did not raise an issue of fact regarding alleged severe medical impairment based on back and knee pain when he only complained about his back pain three times over the relevant period and did not request pain medication "beyond simple Ibuprofen and similar over-the-counter medications").[5]

Defendant argues that the circumstances of this case do not raise a triable issue of fact that Plaintiff's back pain was a "serious medical condition" because (1) "there is no proof that the plaintiff's back pain worsened as a result" of Defendant discontinuing Plaintiff's pain medication; and (2) "there is no documentation that the plaintiff complained of increased back pain at sick call between September 29, 20[10] when the Percocet was discontinued, and November 30, 2010." (Dkt. No. 29-7 at 3.)

Plaintiff's medical records show that Defendant discontinued Plaintiff's pain medication

---

[5] The Court will provide Plaintiff with a copy of these unpublished decisions in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

on September 29, 2010.  (Dkt. No. 30 at 4.[6])  The next entry in Plaintiff's medical records is dated October 4, 2010, and shows that Plaintiff was not seen at sick call because security reported that he was not ready when called.  *Id*.  On November 30, 2010, Plaintiff reported sciatic pain and that he could not "ignore . . . any more."  *Id*.

Plaintiff argues that he has raised a triable issue of fact regarding the seriousness of his back pain.  (Dkt. No. 36 at 5-6.)  The record contains six references to Plaintiff's back pain.  First, Plaintiff testified at his deposition that ever since his incarceration , his back "was in all kinds of pain, and it seemed like it never got any - - it always got worse . . . and the pain was really unbearable.  That is why I need pain medication."  (Dkt. No. 29-3 at 9:23-10:5.)  Second, Plaintiff states in his verified complaint that his "back is always in pain."  (Dkt. No. 16 ¶ 5.)  Third,  Plaintiff states in his verified complaint that he was in "debilitating pain" when the doctor reinstated the pain medication that Defendant had discontinued.  (Dkt. No. 16 ¶ 10.)  Fourth, in a grievance filed on September 29, 2010, Plaintiff stated that his back pain was "substantial."  (Dkt. No. 29-4 at 5.)  Fifth, in his appeal of that grievance to the superintendent, Plaintiff stated that he was "in substantial pain and I need pain medication."  (Dkt. No. 29-4 at 9.)  Sixth, in his appeal of that grievance to CORC, Plaintiff stated that the lack of pain medication "is causing me substantial pain."  (Dkt. No. 29-4 at 4.)

Given the special solicitude that much be extended to pro se civil rights litigants and the fact that the Court must draw all reasonable inferences against the party moving for summary judgment, I find that Plaintiff has raised a triable issue of fact that the back pain he experienced

---

[6]  Citations to page numbers in Plaintiff's medical records are to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

as a result of Defendant discontinuing his pain medication constitutes a serious medical condition for Eighth Amendment purposes. Plaintiff repeatedly referred to his back pain during the relevant period as "substantial." Plaintiff's evidence, if credited, is sufficient for a reasonable juror to conclude that Plaintiff experienced severe back pain for two months as a result of Defendant discontinuing his pain medication.

### 2. Withdrawal Symptoms

Plaintiff alleges in his verified complaint that he experienced cold and hot sweats, diarrhea, breathing problems, anxiety attacks, insomnia, muscle soreness and weakness, heartburn, migraine headaches, depression, extreme tiredness, vomiting, upset stomach, and tingling all over his body as a result of Defendant abruptly discontinuing his pain medication. (Dkt. No. 16 ¶ 8.) At his deposition, Plaintiff testified that he threw up on twelve occasions over two days, had diarrhea for three or four days, could not sit still, felt like there were bugs on him for four days, could not sleep for four days, could not eat for two or three days, and had hot and cold sweats. (Dkt. No. 29-3 at 17:1-18:8.)

Defendant argues that the withdrawal symptoms that Plaintiff experienced do not constitute a serious medical condition. (Dkt. No. 29-7 at 4.) Defendant cites three unpublished cases for the proposition that constipation, lack of energy, diarrhea, staph infections, blurry vision, painful bumps on the arms, abdominal pain, vomiting, heartburn, extreme body heat, a seizure, diarrhea, and dehydration are not serious medical conditions. *Id*. The cases cited by Defendant do not address Plaintiff's breathing problems, anxiety attacks, insomnia, muscle soreness and weakness, migraine headaches, depression, and tingling. Given the relatively short duration of the symptoms, it is unlikely that Plaintiff's withdrawal symptoms constituted a

serious medical condition. However, in an abundance of caution due to Plaintiff's pro se status and Defendant's status as the moving party, I find that there is a triable issue of fact that Plaintiff's withdrawal symptoms were sufficiently serious to meet the objective prong.

### C. Deliberate Indifference

Defendant argues that even if Plaintiff has raised a triable issue of fact as to the objective prong of his Eighth Amendment claim, she is entitled to summary judgment because the undisputed facts show that she did not act with deliberate indifference. (Dkt. No. 29-7 at 4-6.) Defendant is correct.

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d at 703 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06. Moreover, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment." *Id.* at 106. Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.*; *see also Smith*, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle

13

for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.")

Here, Defendant declares that inmates at Auburn who are prescribed narcotic medications are monitored for compliance with those medications through lab work. (Dkt. No. 29-6 ¶ 6.) In September 2010 the results of one such blood test showed that Plaintiff was not taking his Percocet as prescribed. *Id*. ¶ 8. As a result, Defendant discontinued the medication. *Id*. ¶ 9. In Defendant's professional medical judgment, it was not medically necessary to wean Plaintiff off of the medication because his blood work indicated that he was not taking the medication regularly and therefore would not suffer from any withdrawal symptoms. *Id*. ¶ 10. Although Plaintiff argues that Defendant's decision did not comply with FDA standards (Dkt. No. 36 at 2), this argument merely raises a question regarding medical malpractice. As discussed above, simple medical malpractice does not constitute deliberate indifference. Therefore, I recommend that the Court grant Defendant's motion for summary judgment.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 29) be **<u>GRANTED</u>**; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of *Thomas v. Connolly*, 2012 U.S. Dist. LEXIS 124644, 2012 WL 3776698 (S.D.N.Y. Apr. 10, 2012); *Flemming v. City of N.Y.*, 2009 U.S. Dist. LEXIS 92132, 2009 WL 3174060 (E.D.N.Y. Sept. 30, 2009); *Williams v. Smith*, 2009 U.S. Dist. LEXIS 69871, 2009 WL 2431948 (S.D.N.Y. Aug. 10, 2009); *Morrison v. Mamis*, 2008 U.S. Dist. LEXIS 106416, 2008 WL 5451639 (S.D.N.Y. Dec. 18, 2008); *Nelson v. Rodas*, 2002 U.S. Dist. LEXIS 17359, 2002 WL 31075804 (S.D.N.Y. Sept. 17, 2002); *Gillespie*

*v. N.Y. State Dep't of Corr. Servs.*, 2010 U.S. Dist. LEXIS 26246, 2010 WL 1006634 (N.D.N.Y. Feb. 22, 2010); *Phillips v. Goord*, 2009 U.S. Dist. LEXIS 29322, 2009 WL 909593 (W.D.N.Y. Apr. 1, 2009); *Jackson v. Fairchild*, 2007 U.S. Dist. LEXIS 17497, 2007 WL 778133 (N.D.N.Y. Mar. 12, 2007).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: July 3, 2013
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge